UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMY FARAGALLA,<br><br>              Plaintiff<br>v.<br><br>MORTON OTUNDO,<br><br>              Defendant. | Civ. No. 17-3604 (KM)<br><br>**OPINION & ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

Now before the Court is the Defendants' motion *in limine* (DE 66), seeking a ruling precluding Plaintiff Samy Faragalla ("Faragalla") from introducing (1) the expert report and testimony of Lucien J. Eid, D.C. and Matthew Garfinkel, M.D. and (2) Faragalla's medical bills into evidence, in which Morton Otundo ("Officer Otundo") (DE 67) joins (together, the "Defendants") and Faragalla ("Faragalla") opposes (DE 69).[1] The Court has considered the parties' submissions and decides the matter without oral argument under Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

For the reasons stated herein, Defendants' motion *in limine* is **GRANTED** in part and **DENIED** in part.

**I.    STANDARD OF REVIEW**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's

---

[1] Defendants also move to bar (1) Faragalla from recovering damages for pain and suffering as to his tort claims and (2) evidence relating to "the personnel and Internal Affairs records and files of the defendants and any officer called to testify." *See* DE 66. Faragalla does not oppose this portion of Defendants' motion *in limine*, in light of the Court's granting Defendants summary judgment with respect to Faragalla's asserted pain and suffering damages and *Monell* claims (DE 69*; see also* Op. at 18, 20, 23-24. The Court grants Defendants' motion as to these items, which are not the subject of this Opinion.

1

inherent authority to manage the course of trials." *United States v. Browne*, No. CR 20-965 (MAS), 2022 WL 1063953, at *1 (D.N.J. Apr. 8, 2022) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Courts often rule on pre-trial *in limine* motions to admit or exclude certain evidence so that "the court can shield the jury from unfairly prejudicial or irrelevant evidence." *Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002). "The *in limine* motion then fosters efficiency for the court and for counsel by preventing needless arguments at trial." *Id.* (citations omitted) (emphasis added). "Because a ruling on a motion *in limine* is 'subject to changes as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09-1153, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996)).

## II.    DISCUSSION

Defendants first move to exclude the reports and testimony of Faragalla's expert witnesses, (1) Dr. Lucien Eid, a licensed chiropractor at Back to Wellness Chiropractic, LLC, located in North Brunswick, New Jersey, and (2) Dr. Matthew Garfinkel, a knee and shoulder specialist at Edison-Metuchen Orthopedic Group, located in Edison New Jersey.

Dr. Eid found that "based upon the history provided by the patient, the initial and subsequent examinations, clinical course, and diagnostic studies that there is a direct correlation between the patient's current complaints and the trauma, which occurred on July 8, 2016." DE 69-1 Ex. C at 6. Dr. Eid also concluded that "[t]he diagnostic testing performed revealed objective medical evidence, that in all chiropractic probability, there is causal relationship between the patient's injury and the aforementioned trauma." *Id.* Finally, Dr. Garfinkel stated that it was his "medical opinion within a reasonable degree of medical probability that the patient's right shoulder injuries are directly and causally related to the incident of [July 8, 2016]." DE 69-1, Ex. B at 4.

Although Defendants' motion is framed as one requesting the total exclusion of Dr. Eid and Dr. Garfinkel's reports and testimony as net opinions

(*see* DE 66 at 2 ("Bar the reports and testimony of Lucien J. Eid, D.C. and Matthew Garfinkel, M.D.")), Defendants do not appear to actually dispute that "Dr. Eid and Dr. Garfinkel are qualified to testify that Plaintiff sustained injuries." (Mot. at 3.) Instead, Defendants specifically contend that Faragalla's experts "are not qualified to testify about what *caused* Plaintiff's injuries" and that any testimony concerning *causation* "is an inadmissible net opinion." (*Id.*) (emphasis added).

Moreover, Defendants highlight that while Faragalla's alleged incident with Officer Otundo occurred on July 8, 2016, Faragalla (1) was also involved in automobile accidents in August 2016 and November 2017 and (2) "received medical treatment throughout this time for a variety of injuries all allegedly related to different incidents." (*Id.* at 3-4.) Accordingly, Faragalla's experts did not evaluate him for treatment until over a year after the alleged incident with Officer Otundo and after Faragalla "had been in his third or fourth known car accident." (*Id.* at 4-5.)[2]

Pursuant to the Federal Rules of Evidence, it is my role as "the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)) (*see also Iudici v. Camisa et al.*, No. 12-3466 (JXN), 2022 WL 3998295 at *2 (D.N.J. Sept. 1, 2022)). Accordingly, to fulfill the Court's role as gatekeeper, I analyze the admissibility of an expert's testimony under Federal Rule of Evidence 702's requirement, which include: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Kannankeril*, 128 F.3d at 806 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994).

---

[2] Defendants also submit that Faragalla was involved in an automobile accident in November 2017, that resulted in Faragalla seeking medical treatment for his back and knee. (*Id.* at 5 (citing DE 33-2 ¶ 22). Thus, the logical inference is that Dr. Garfinkel's initial examination likely occurred after the November 2017 accident.

"Under New Jersey law, an 'expert's bare conclusions, unsupported by factual evidence' are an inadmissible 'net opinion.'" *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008) (quoting *Buckelew v. Grossbard*, 87 N.J. 512, 524 (1981)). Pursuant to the net opinion rule, the expert's opinion "must be based on a proper factual foundation." *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super 309, 323 (N.J. App. Div. 1996). The expert's testimony should be excluded "if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." *Id.* (quoting *Vuocolo v. Diamond Shamrock Chems. Co.*, 240 N.J. Super. 289, 299 (N.J. Super. Ct. App. Div. 1990)). Simply put, an expert is required "to give the 'why and wherefore' of the opinion, rather than a mere conclusion." *Curtis v. Besam Grp.*, No 05-2807, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007).

The Court clarifies "that the admissibility of expert testimony in federal court is not governed by the New Jersey 'net opinion' rule, but by the Federal Rules of Evidence." *Gurvey v. Twp. of Montclair New Jersey*, No. CV1917525KMESK, 2022 WL 970303, at *19 (D.N.J. Mar. 31, 2022); *see also Holman Enter. v. Fidelity & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 n.12 (D.N.J. 2008) ("[T]he 'net opinion' rule is neither an evidentiary rule under the Federal Rules of Evidence nor [an explicit] factor in the *Daubert* analysis.") Nevertheless, some courts in this District assess net opinion arguments under *Daubert's* fit requirement. *See Jersey Cent. Power & Light*, No. 03-6161, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008). Other courts analyze whether the expert's opinion is of "assistance to the trier of fact" and sufficient to establish causation. *See May v. Atl. City Hilton*, 128 F. Supp. 2d 195, 198 (D.N.J. 2000). Irrespective of whether this issue is analyzed under *Daubert* or as an independent net opinion analysis, "the inquiry remains the same—whether the expert's opinion will assist the trier of fact." *Iudici*, 2022 WL 3998295 at *3.

### A. Dr. Eid's Medical Report

First, I find that Dr. Eid's conclusion—"that in all chiropractic probability, there is causal relationship between [Faragalla's] ... injuries and the ... [alleged] trauma" from the alleged incident with Officer Otundo—is based on his observations of Faragalla during his examination, medical evidence, and relevant literature (including citations to various report). For example, Dr. Eid concludes that "due to the trauma on July 8, 2016, [Faragalla] ... sustained severe sprain/strain type injury" to he cervical and lumbar spine. (DE 69-1 Ex. C at 5.) In support of this finding, Dr. Eid cites three different references for his opinion that "fibrotic tissue subsequent to trauma and healing, have a residual weakness and residual stiffness or inelasticity." (*Id.* at 5-6.) According to Dr. Eid, such "mechanical residuals tend to cause exacerbation of pain and/or spasms at times of increased use or stress on these once damaged tissues that have healed and are now fibrotic." (*Id.* at 6.)

Moreover, in finding that Faragalla sustained a disc herniation from the alleged incident, Dr. Eid opined that "[w]hen a whiplash injury occurs, forces exerted on the discs cause tearing of the outermost annular fibers," which can result in "sequels of neurological, skeletal and muscularly related problems." (*Id.*) Likewise, Dr. Eid also took into account Faragalla's prior disc bulge injury in his lumbar spine, concluding that (1) the July 8, 2016 alleged incident "exacerbated" his condition and (2) the resulting "disc morphology" from the injury is "irreversible" and "can lead to a sequel of neurological, skeletal and muscularly related problems." (*Id.*)

While these referenced portions are not exhaustive of Dr. Eid's entire report, I am satisfied that the report and his proposed testimony as to causation contain sufficient factual foundation. Although Defendants may feel that Dr. Eid did not sufficiently consider Faragalla's prior automobile accidents—particular those which occurred after Faragalla's alleged incident with Officer Otundo—Defendants are free to cross-examine Dr. Eid or make piecemeal objections at trial. Nonetheless, Dr. Eid's report is admissible, and

Dr. Eid may testify as a medical expert as to the causation of Faragalla's injuries.

### B. Dr. Garfinkel's Medical Report

The Court finds, however, that Dr. Garfinkel's expert opinion as to causation constitutes a net opinion. Dr. Garfinkel's report states that Faragalla conveyed to him that he injured his right shoulder on July 8, 2016, "when a police officer … punched him in the chest and grabbed him by his right arm and pulled his right arm and threw him to the ground." (DE 69-1 Ex. B at 1.) Dr. Garfinkel concludes that in his "medical opinion within a reasonable degree of medical probability[,] … [Faragalla's] right shoulder injuries are directly and causally related to the incident of [July 8, 2016]." (*Id.* at 4.)

Although Dr. Garfinkle describes, in part, (1) his initial and subsequent examinations of Faragalla's right shoulder, between November 29, 2017 and September 20, 20128, (2) his recommended treatment plan for Faragalla's injuries, and (3) Faragalla's May 21, 2018 surgery at Menlo Park Surgical Center, the report is bereft of further support concerning the cause of Faragalla's injuries. Thus, it appears to the Court that Dr. Garfinkel's finding on causation is solely derived from Faragalla's representations. The Court therefore finds that Dr. Garfinkel's report and proposed testimony as to causation lack sufficient factual foundation and constitutes a net opinion.

### C. Faragalla's Medical Bills

Finally, Defendants move to bar Faragalla's experts from testifying about his medical bills and introducing these bills into evidence, arguing that there is "no evidence that the treatment is related to the incident with Officer Otundo in July 2016." *See* Mot. at 4, 6; *see also* DE 69-1 Ex. B at 4, Ex. C at 7). The Court disagrees.

As an initial matter, the question of whether Faragalla's injuries were caused by Otundo is a question for the jury. Leaving aside the fact that Dr. Eid may testify as to causation, the Court does not believe that the experts' testimony as to Faragalla's incurred medical bills only bear on causation. If the

6

jury finds that Defendants are liable for Faragalla's asserted injuries, such evidence is relevant to the jury's damages calculation.

Further, in opining upon Faragalla's medical bills and statements, both Dr. Eid and Dr. Garfinkel provide detailed descriptions of (1) consultations with Faragalla, including dates that Faragalla underwent various diagnostic testing, (2) rendered treatment, including injections, prescription medication, physical therapy, chiropractic treatment, and surgery, and (3) corresponding billing statements. More importantly, both experts explicitly state that their treatment was related to the injuries Faragalla suffered during the July 8, 2016 incident. (*See* DE 69-1 Ex. B-1 at 2; Ex. C at 7.)

Dr. Eid and Dr. Garfinkel have provided sufficient factual foundation with respect to their opinions concerning Faragalla's medical bills; thus, their expert reports and proposed testimony do not constitute net opinions. Accordingly, (1) Dr. Eid and Garfinkel may testify about Faragalla's medical bills and (2) Faragalla may introduce the medical bills into evidence.

## ORDER

For the reasons set forth above,

**IT IS** this 7th day of September, 2022,

**ORDERED** that the motion *in limine* of the Defendants is **GRANTED** in part and **DENIED** in part. Faragalla is barred from (1) introducing Dr. Garfinkel's report and testimony concerning the cause of his injuries into evidence, (2) introducing evidence related to the personnel and Internal Affairs records and files of Defendants and any officers called to testify, and (3) recovering any damages for pain and suffering for tort claims. On the other hand, Faragalla may introduce (1) Dr. Eid's report and testimony concerning the cause of his injuries into evidence, (2) Dr. Eid and Dr. Garfinkel's report and testimony related to Faragalla's medical expenses, along with Faragalla's medical bills, into evidence.

/s/ Kevin McNulty
_____
**Kevin McNulty**
**United States District Judge**